## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF NEW YORK
## SYRACUSE DIVISION

| | |
|---|---|
| TURNING POINT USA AT SUNY CORTLAND; GABRIELLA DELORENZO; AND MEGAN ROTHMUND, <br><br> *Plaintiffs,* <br><br> v. <br><br> CORTLAND COLLEGE STUDENT ASSOCIATION; ERIK BITTERBAUM, in his personal and official capacities as SUNY Cortland President; AND NIKOLAY KARKOV, in his personal and official capacities as SUNY Cortland professor, <br><br> *Defendants.* | CASE NO.: 5:24-cv-253 (MAD/ML) <br><br><br> VERIFIED COMPLAINT <br><br><br> JURY TRIAL DEMANDED |

### INTRODUCTION

*"We silence voices all the time in this country."*

–SUNY Cortland President Erik Bitterbaum

1.     SUNY officials have imposed their faulty interpretation of First Amendment protections to silence student views on campus.

2.     In Fall 2023, Plaintiff SUNY Cortland students Gabriella Delorenzo and Megan Rothmund assembled with other students to form Plaintiff Turning Point USA at SUNY Cortland (TPUSA).

3.     Plaintiff TPUSA desires to spread its message of freedom, free markets, and limited government on campus by hosting speakers and debates, distributing literature, posting flyers, and tabling.

4.     Plaintiff TPUSA is one of over 3,500 chapters of the national Turning Point USA organization, which advocates across the nation for its message of fiscal responsibility, free markets, and limited government.

5.     Plaintiffs complied with all requirements set by Defendants Student Government and President Erik Bitterbaum to become a recognized student organization and receive the benefits of Defendants' student organization forum, including access to campus meeting spaces and allocations of the mandatory student activity fee.

6.     But Defendants Student Government and Bitterbaum withheld recognition from Plaintiff TPUSA under their *Nonrecognition Policy* because the Student Government's Student Senate and Defendant SUNY Cortland Professor Defendant Nikolay Karkov objected to and attacked Plaintiffs' views.

7.     Defendants' *Nonrecognition Policy* requires the Student Government Review Committee and Student Senate to approve every organization seeking recognition, but it imposes no criteria guiding the Student Government's discretion.

8.     So Defendants Student Government and Bitterbaum can withhold recognized student organization status for any reason or no reason at all.

9.     When Plaintiffs respectfully presented TPUSA to the Student Senate, Student Senators and Defendant Karkov launched a planned assault on their views.

10.     Student Senators and Defendant Karkov assailed what they perceived to be the national Turning Point USA organization's views on gender identity, critical race theory, and race relations.

11.     The Student Senate then voted to withhold recognition from Plaintiff TPUSA.

12.     A few days later, Plaintiffs met with Defendant Bitterbaum who also withheld recognized status from Plaintiff TPUSA.

13.     Defendant Bitterbaum discouraged Plaintiffs from applying again for recognition because the same students and Defendant Karkov might again assail their views.

14.     According to Defendant Bitterbaum, suffering viewpoint discrimination is merely par for the course in our democracy.

15.     Contrary to Defendants' dictates, the First Amendment protects us all from government censorship.

16.     Defendant Bitterbaum's refusal to grant Plaintiff TPUSA recognized status necessitated Plaintiffs filing this lawsuit for injunctive and declaratory relief and nominal and compensatory damages to vindicate and safeguard their fundamental rights.

## JURISDICTION AND VENUE

17.     This civil rights action raises federal questions under the First and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

18.     This Court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

19.     This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. §§ 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Federal Rule of Civil Procedure 65; and costs and attorneys' fees under 42 U.S.C. § 1988.

20.     Venue is proper in this district under 28 U.S.C. § 1391(b) because Defendants reside in this district and all of the acts described in this Complaint occurred in this district.

## PLAINTIFFS

21.     Plaintiff Turning Point USA at SUNY Cortland (TPUSA) is a nonpartisan expressive student organization at the State University of New York at Cortland (SUNY Cortland) and an unincorporated association of students at SUNY Cortland.

22.     Plaintiff TPUSA exists to promote the principles of freedom, free markets, and limited government at SUNY Cortland.

3

23.     Plaintiff TPUSA desires to express its message by hosting speakers and debates, distributing literature, posting flyers, tabling, and otherwise engaging in speech with students, professors, and others on SUNY Cortland's campus and by receiving its proper allocation of SUNY Cortland's mandatory student activity fee.

24.     Plaintiff TPUSA is a chapter of the national Turning Point USA organization.

25.     The national Turning Point USA organization is a nonprofit, nonpartisan organization that seeks to educate students about the importance of fiscal responsibility, free markets, and limited government.

26.     The national Turning Point USA organization fulfills its mission by empowering young activists, building strong campus networks, organizing conferences, equipping students with knowledge and strategies, and registering students to vote.

27.     Turning Point USA imbues its members with grassroots humility, advocates with a warrior spirit, and expects persistent innovation.

28.     Turning Point USA has chapters at over 3,500 colleges and high schools nationwide.

29.     Plaintiff Gabriella Delorenzo is a senior at SUNY Cortland and Plaintiff TPUSA's President.

30.     Plaintiff Delorenzo brings this action on behalf of herself as a student and in her official capacity as the president of Plaintiff TPUSA.

31.     Plaintiff Megan Rothmund is a sophomore at SUNY Cortland and Plaintiff TPUSA's Vice President.

**DEFENDANTS**

32.     Defendant Cortland College Student Association is a non-profit membership corporation under the laws of the State of New York.

33.     Defendant Cortland College Student Association is also known as the Student Government Association of the State University of New York, College at Cortland; Student Government Association; and the Student Government.

34.     Pursuant to Defendant Student Government's Constitution, the Government's membership is comprised of all SUNY Cortland students. Ex. 1 at 3 (Student Government Constitution art. I, § 1). A true, accurate, and complete copy of the Student Government Constitution is Exhibit 1.

35.     Students are automatically considered members of Defendant Student Government regardless of whether the students wish to participate. *Id.* (Student Government Constitution art. I, § 1).

36.     Pursuant to New York law and SUNY policy, SUNY Cortland requires each student to pay a mandatory student activity fee of $110 per semester per full-time student. *See* N.Y. Comp. Codes R. & Regs. tit. 8, § 302.14; Ex. 2 at 1–2 (SUNY Policy 3901, Student Activity Fees – Mandatory). A true, accurate, and complete copy of SUNY Policy 3901, Student Activity Fees – Mandatory is Exhibit 2.

37.     Pursuant to New York law and SUNY policy, Defendant Student Government controls and distributes the mandatory student activity fees subject to "approv[al] by the campus president or designee." *Id.* at 2 (SUNY Policy 3901 § C.4); *see* N.Y. Comp. Codes R. & Regs. tit. 8, § 302.14(c)(4).

38.     Defendant Student Government, subject to the control of SUNY Cortland President Defendant Erik Bitterbaum, implements and enforces the *Nonrecognition Policy* challenged in this lawsuit.

39.     Defendant Student Government, subject to the control of Defendant Bitterbaum, has the power to repeal or modify the *Nonrecognition Policy*.

40.     At all times relevant, Defendant Erik Bitterbaum was and is SUNY Cortland's President.

41.     As campus president, Defendant Bitterbaum serves as the "chief administrative officer" of SUNY Cortland. Ex. 3 at 3 (SUNY Policies of the Board of Trustees art. IX, tit. A, § 1(a)). A true and accurate copy of relevant excerpts of the SUNY Policies of the Board of Trustees is Exhibit 3.

42.     As "chief administrative officer" Defendant Bitterbaum is "responsible" to SUNY's "Chancellor and the Board of Trustees for, and shall administer" SUNY Cortland "and shall promote its development and effectiveness." *Id.* (SUNY Policies of the Board of Trustees art. IX, tit. A, § 2).

43.     As "chief administrative officer," Defendant Bitterbaum has the responsibility "for the preparation and publication of a college handbook" which must "include an administrative organization chart, a statement of administrative responsibilities, faculty bylaws, local policies, and such other information concerning the college as he or she may deem advisable." *Id.* at 4 (SUNY Policies of the Board of Trustees art. IX, tit. A, § 3).

44.     Defendant Bitterbaum published the most recent version of SUNY Cortland's *Handbook* in Fall 2023. A true and accurate copy of relevant excerpts of that *Handbook* is Exhibit 4.

45.     Under Chapter 180 titled "Cortland Student Governance," Defendant Bitterbaum's *Handbook* provides, "View the Student Government Association constitution and bylaws on [Defendant Student Government's website]." Ex. 4 at 2.

46.     As campus president, Defendant Bitterbaum has ultimate control over Defendant Student Government and its allocation of student activity fees.

47.     As campus president, Defendant Bitterbaum has ultimate control over granting student organizations the privileges and benefits of recognized student organization status.

48. Defendant Bitterbaum has delegated the power to recognize student organizations and thus grant student organizations the benefits of the student organization forum to Defendant Student Government.

49. Defendant Bitterbaum is responsible for the approval, rejection, amendment, repeal, and enforcement of the *Nonrecognition Policy* and related practices challenged in this lawsuit.

50. Defendant Bitterbaum has the authority to revise the *Nonrecognition Policy* and related practices challenged in this lawsuit and to implement policies prohibiting Defendant Student Government from withholding recognized group status from Plaintiff TPUSA.

51. If it were not for the policies implemented by Defendant Bitterbaum, Defendant Student Government would not have the authority to withhold recognition from Plaintiff TPUSA.

52. Defendant Bitterbaum is sued in his official and personal capacities.

53. At all times relevant, Defendant Nikolay Karkov was and is a professor at SUNY Cortland. He teaches and researches on socialism, Marxism, and feminist theory.

54. Defendant Karkov is sued in his official and personal capacities.

## FACTUAL BACKGROUND

### I. SUNY Cortland's student organization forum and its benefits

55. As campus president, Defendant Bitterbaum has established the student organization forum for student organizations to engage in expression.

56. Defendant Bitterbaum regulates that forum through recognizing or withholding recognition from certain student organizations.

57. Defendant Bitterbaum has delegated the power to recognize student organizations to Defendant Student Government.

58. The benefits of the student organization forum include:

(A)     Access to funding from the mandatory student activity fee;

(B)     ability to reserve space on campus for events and meetings;

(C)     ability to post flyers and otherwise advertise the organization on campus; and

(D)     ability to table on campus.

59.     Without recognition, student organizations do not have access to these benefits.

60.     Plaintiffs have paid the mandatory student activity fee every semester they have been enrolled at SUNY Cortland.

## II.   Defendants' *Nonrecognition Policy*

61.     Defendant Student Government decides whether to grant or withhold recognition under its *Nonrecognition Policy*. A true, accurate, and complete copy of the *Nonrecognition Policy* is Exhibit 5.

62.     Under the *Nonrecognition Policy*, Defendant Student Government "give[s] serious consideration" to applications for recognized student organizations "weighed heavily against [Defendant Student Government's] resources, the needs of the student population, and the potential impact the creation of a new club would have on existing clubs." Ex. 5 at 1.

63.     Defendant Student Government's *Nonrecognition Policy* establishes eight criteria for recognition. The organization must:

(A)     "Provide a valid service to SUNY Cortland that does not already exist";

(B)     "[B]e open to all Student Activity Fee (SAF) paying SUNY Cortland students";

(C)     "Engage in an activity that is not competitive and/or sports related";

(D)   "Prove that a minimum of 40 SUNY Cortland students support the establishment of this club";

(E)   "[N]ot create a demand for resources (supervision, facilities, financial, etc.) greater than that which can be met";

(F)   "[N]ot have an excessive amount of risk involved with the proposed activity";

(G)   "[H]ave a faculty/staff advisor and at least 3 students to fill officer roles"; and

(H)   "[F]ollow all university and SGA policies." *Id.*

64.   Defendant Student Government's *Nonrecognition Policy* likewise has eight steps in the application process:

(A)   "Schedule an initial meeting with the SGA Vice President to discuss the purpose/objectives of the proposed new club";

(B)   "Schedule and host an interest meeting for interested students to learn more information about the proposed club and your plans for establishing it";

(C)   "Collect a petition of at least 40 current SUNY Cortland students who support recognizing the club";

(D)   "Develop a constitution and submit it along with the petition to the SGA Vice President";

(E)   Make changes to the organization's constitution as requested by the "SGA Review Committee";

(F)   "Once the Review Committee approves the proposed constitution, the SGA Vice President will add it to the agenda of an upcoming Student Senate meeting";

(G)   "Make a presentation to the Student Senate including information about your proposed club, how many interested students

you have, and your plans if you were to successfully become recognized"; and

(H)   "The Student Senate will vote whether or not they support the establishment of the new club." *Id.* at 1–2.

65.   Defendant Student Government's Vice President chairs the Review Committee and nominates its four other members, subject to Student Senate confirmation. Ex. 1 at 7 (Student Government Constitution art. IV, § 6).

66.   The Review Committee must "review any proposal to create a new club … before any such proposal is presented to the Senate." *Id.* (Student Government Constitution art. IV, § 6).

67.   Defendant Student Government's Student Senate is the legislative body of Defendant Student Government. *Id.* at 4 (Student Government Constitution art. III, § 1).

68.   The Student Senate "consist[s] of a Senator representing each Student Government Club, At Large Senators, a faculty representative, the Student Government Association Advisor, and all members of the Executive Board." *Id.* at 5 (Student Government Constitution art. III, § 2).

69.   The Student Government Association Advisor is a designee of Defendant Bitterbaum and is a non-voting member of the Student Senate. *Id.* (Student Government Constitution art. III, § 6).

70.   The Executive Board "consist[s] of the President, the Vice President, and the Chief Financial Officer" of Defendant Student Government. *Id.* at 3 (Student Government Constitution art. II, § 2).

71.   Neither the *Nonrecognition Policy* nor any other policy or practice requires that Defendant Student Government's Review Committee or Student Senate use any criteria in their vote to either recognize or withhold recognition from a student organization.

72.     Defendant Student Government's Review Committee and Student Senate have absolute discretion in whether to recognize or withhold recognition from a student organization.

### III.     Plaintiffs form TPUSA and comply with Defendants' *Nonrecognition Policy* but Student Senators and Defendant Karkov nonetheless grill them on their views and withhold recognized status.

73.     In the Fall of 2023, Plaintiffs Delorenzo, Rothmund, and other SUNY Cortland students assembled to form Plaintiff TPUSA.

74.     They believe in Plaintiff TPUSA's mission of freedom, free markets, and limited government and wanted to discuss their views on campus.

75.     Plaintiff Delorenzo has followed the national Turning Point USA organization since she was 15.

76.     Plaintiff Rothmund believes it is crucial for people of her generation to be able to have a collective, coordinated conversation about the politics affecting our country. She believes Plaintiff TPUSA will help bring that conversation to SUNY Cortland students.

77.     In Fall 2022, two students attempted to start a Turning Point USA chapter at SUNY Cortland, but the Student Senate withheld recognition after a contentious Senate meeting.

78.     The Fall 2022 Senate meeting focused on views the Senators ascribed to the national Turning Point organization.

79.     Plaintiff Delorenzo did not want Turning Point's views to remain silent on campus, so she determined to achieve recognition for Plaintiff TPUSA.

80.     Over the course of two months, Plaintiffs spent at least 45 hours to complete all steps required for student organization recognition under Defendants' *Nonrecognition Policy* identified in paragraph 64(A)–(G) with the exception that

11

Defendant Student Government's Vice President exempted Plaintiffs from hosting the interest meeting.

81.    Plaintiffs held an initial meeting with Defendant Student Government's Vice President, collected the required number of signatures, and developed a constitution approved by Defendant Student Government's Review Committee.

82.    On November 8, 2023, Plaintiffs presented their plans for Plaintiff TPUSA to the Review Committee.

83.    The Review Committee approved Plaintiffs' proposal for Plaintiff TPUSA.

84.    On November 28, 2023, Plaintiffs presented about Plaintiff TPUSA to the Student Senate. A true, accurate, and complete copy of the minutes from that meeting of the Student Senate is Exhibit 6.

85.    A large number of other students and Defendant Karkov attended the Student Senate meeting to oppose Plaintiff TPUSA from receiving recognition.

86.    After Plaintiffs presented about TPUSA, Student Senators had the opportunity to ask questions.

87.    Student groups and Defendant Karkov had planned in advance to criticize Plaintiffs' views and prevent Plaintiff TPUSA from becoming a recognized student organization because of those views.

88.    The questions focused on the views of TPUSA and the national Turning Point USA organization.

89.    The Student Senator from the History Club asked Plaintiffs how they could claim to start a nonpartisan club when the national Turning Point USA's Twitter account allegedly supported Republican views and candidates. Ex. 6 at 9.

90.    The Student Senator from the SUNY Cortland Recreation Association (SCRA) asked Plaintiffs about the national Turning Point USA's mission to educate clubs on combatting "the left." *Id.*

91.    The Student Senator from the French club asked Plaintiffs "how much of the [national] TPUSA organization they planned on representing." *Id.*

92.    The Student Senator from the Hillel club asked Plaintiffs why they chose "to associate themselves with Turning Point." *Id.* at 10.

93.    The Student Senator from the Spanish club asked Plaintiffs whether they were affiliated with the national Turning Point USA organization. *Id.*

94.    Plaintiffs confirmed they were affiliated with the national organization. *Id.*

95.    The Student Senator from the Student Activity Board (SAB) asked why Plaintiff TPUSA's constitution was so similar to the constitution on the national Turning Point USA's website. *Id.*

96.    The Student Senator from the Cortland Writers Association asked why Plaintiffs needed to create a club at all because there were other "clubs who allow for nonpartisan views." *Id.*

97.    The Student Senator from the Black Student Union (BSU) then yielded his time to Defendant Karkov. *See id.* at 11.

98.    Defendant Karkov began his prepared remarks by informing Plaintiffs, "We're not here to support you."

99.    Defendant Karkov's statement about "we" referred to himself and the numerous students there who opposed Plaintiff TPUSA receiving recognition.

100.    Defendant Karkov began to discuss events and viewpoints he attributed to the national Turning Point USA organization because he told Plaintiffs they could "not so much disaffiliate" from the national organization.

101.    Defendant Karkov discussed what he believed to be the national Turning Point USA organization's views on gender identity and critical race theory and indicated that those views opposed "queer" people.

102.    Over a minute into Defendant Karkov's speech, Plaintiff Delorenzo respectfully asked him if he had a question because the purpose of the time was for Student Senators to ask questions.

103.    Defendant Karkov continued, referencing what he believed to be the national Turning Point USA organization's views on race relations and labeling those views as racist.

104.    Two minutes into Defendant Karkov's prepared remarks, Plaintiff Delorenzo informed him she would have to stop him because he was not asking a question.

105.    Other students interjected, shouting "Let him speak! Let him finish!"

106.    Defendant Karkov continued with his prepared remarks, discussing views he attributed to the national Turning Point USA organization about race.

107.    Defendant Karkov then informed Plaintiffs that the views he had just described came from "the organization [Plaintiffs] represent[ed]" and they "could not go so far [so as] to disaffiliate."

108.    After three minutes of speaking, Defendant Karkov asked Plaintiffs what they thought about the views he ascribed to the national Turning Point USA organization and why Plaintiff TPUSA "should be chartered to represent SUNY Cortland."

109.    Defendant Karkov received loud applause from the students present, with one giving him a standing ovation.

110.    Plaintiff Delorenzo respectfully said she considered Defendant Karkov's prepared remarks to be a statement, not a question.

111.    Plaintiff Delorenzo affirmed Defendant Karkov's right not to support Plaintiff TPUSA.

112.    Plaintiff Delorenzo affirmed Plaintiff TPUSA's right to receive recognition and right to express its views and those of its student-members on campus.

113.    Plaintiff Delorezno affirmed Plaintiffs' First Amendment rights to their viewpoints and asked audience members what they were "scared of" from Plaintiff TPUSA expressing its views.

114.    Many present heckled Plaintiff Delorenzo during her brief comments and told Plaintiffs to "go home."

115.    Questioning from Student Senators continued.

116.    The Student Senator for the NAACP chapter on campus again asked whether Plaintiff TPUSA was affiliated with the national Turning Point organization and how it "plan[ned] on making everyone feel comfortable in [the] club." *Id.*

117.    The Student Senator for the Men of Excellence club asked Plaintiffs how they planned to make those who read about the views of the national Turning Point organization "comfortable in their club." *Id.* at 12.

118.    A student claimed that "all the speakers" at a national Turning Point convention "were conservative[s] who peddled racism" that made her "as a person of color … feel[ ] uncomfortable" with such people on campus and asked Plaintiffs how they "fe[lt]" about her assertion. *Id.*

119.    The Student Senator for the Education club asked Plaintiffs if "they would ever disaffiliat[e] with the Turning Point organization," even though that Senator claimed to "love[ ] the idea behind the club." *Id.*

120.    Plaintiffs declined to disaffiliate with the national organization. *Id.*

121.    Plaintiffs answered all questions openly and respectfully.

122.    After the questioning finished, Plaintiffs left the room.

123.    Defendant Student Government's Student Senate voted to withhold recognition from Plaintiff TPUSA without explanation.

124. The Student Senate meeting lasted approximately 2 hours, with 1 hour and 40 minutes devoted to questioning Plaintiffs and debating whether to recognize Plaintiff TPUSA.

125. In the days following the Student Senate meeting, students continued to criticize Plaintiffs' views.

126. One Student Senator anonymously posted on social media platform Yik Yak that he or she "was going to vote Yes until [he or she] learned about how hateful of a group" Plaintiff TPUSA allegedly was. Ex. 7 at 2. True and accurate copies of relevant social media posts are Exhibit 7.

127. Anonymous posters made the following statements on Yik Yak:

(A)   "If [Plaintiff TPUSA] existed as [its] own club without the backing of [Turning Point] [it] probably would've been voted in." *Id.* at 3.

(B)   Plaintiff TPUSA "would allow for hate to fester in the darkness." *Id.* at 2.

(C)   The national Turning Point organization's views are "openly racist and homophobic" and "sickening." *Id.* at 1.

(D)   The national Turning Point organization is "generally hateful" and has "racist," "homophobic," and "antisemitic" views. *Id.* at 4.

(E)   The national Turning Point organization is "transphobic, oppose[s] Black Lives Matter and think[s] that women should remain uneducated and stay in the home raising children and cooking for men." *Id.* at 5.

(F)   "[P]lenty of women … have internalized misogyny and actively vote against their own interests." *Id.* at 6.

(G)   Turning Point members are "fake libertarians not nearly extreme enough on their anti government stances." *Id.*

## IV.    Defendant Bitterbaum refuses to right Defendant Student Government's wrong.

128.    On December 4, 2023, Plaintiffs met with Defendant Bitterbaum, Vice President for Student Affairs C. Gregory Sharer, and Associate Vice President for Student Affairs Christopher Kuretich.

129.    Plaintiffs informed Defendant Bitterbaum about Defendant Karkov's inappropriate action against Plaintiffs' and the national Turning Point USA's views and the Student Senate's discrimination against those views in withholding recognition from Plaintiff TPUSA.

130.    Defendant Bitterbaum informed Plaintiffs they had no appeal right from the Student Senate's decision.

131.    Defendant Bitterbaum acknowledged the power imbalance between Defendant Karkov and Plaintiffs but said he couldn't do anything about Defendant Karkov's behavior.

132.    Defendant Bitterbaum "look[ed]" into his "crystal ball" and discouraged Plaintiffs from reapplying in Spring 2024 because "the same people," including Defendant Karkov, could "show up again" and withhold recognition from Plaintiff TPUSA.

133.    Defendant Bitterbaum told Plaintiffs that achieving group recognition "is not always a bed of roses."

134.    Defendant Bitterbaum informed Plaintiffs, "We silence voices all the time in this country. That's the tragedy and also the greatness of democracy."

135.    Defendant Bitterbaum refused to grant Plaintiff TPUSA recognized status.

## V.    Defendants' *Nonrecognition Policy* and related actions have harmed and are harming Plaintiffs.

136.    No SUNY Cortland policy includes a comprehensive list of objective criteria for recognizing student organizations.

137. No Defendant Student Government policy includes a comprehensive list of objective criteria for recognizing student organizations.

138. Defendants' *Nonrecognition Policy* gives discretion to Defendant Bitterbaum and Defendant Student Government to deny student organizations recognition based on the content and viewpoint of the organization's speech.

139. Defendants Student Government and Bitterbaum have used the discretion granted by the *Nonrecognition Policy* to discriminate against Plaintiffs by withholding recognition from Plaintiff TPUSA.

140. Plaintiff TPUSA remains unrecognized by Defendants Student Government and Bitterbaum and thus unable to access the benefits of the student organization forum.

141. Plaintiffs intend to hold speaking and tabling events this semester (Spring 2024).

142. Plaintiff Delorenzo will graduate in May 2024. In the absence of preliminary relief, she will not have the opportunity to access the student organization forum as a member of Plaintiff TPUSA.

143. Defendants' actions and *Nonrecognition Policy* have caused and continue to cause injury to Plaintiffs, including deprivation of constitutional rights, economic damage, damage to reputation, and pain, suffering, and emotional distress.

144. Defendants' actions and *Nonrecognition Policy* have caused economic loss to Plaintiffs by forcing them to pay the mandatory student activity fee which Defendants then distribute in a forum governed by an unconstitutional policy and unconstitutional practices. Plaintiffs have also suffered economic loss from the numerous hours they spent preparing and presenting Plaintiff TPUSA's application for recognized status only to have it unconstitutionally denied.

145. Each of the acts alleged in this complaint were done by Defendants, or their agents or persons under their control, under the color and pretense of state law,

statutes, ordinances, regulations, customs, usages, or policies of the State of New York.

## CLAIMS

146.   Defendants' *Nonrecognition Policy* and actions as described herein violate the First and Fourteenth Amendments and have caused and continue to cause irreparable harm to Plaintiffs.

147.   Plaintiffs have no adequate or speedy remedy at law to correct the deprivation of their rights by Defendants.

148.   Defendants' actions and policies, as set forth above, do not serve any rational, legitimate, or compelling state interest and are not narrowly tailored to serve any such interests.

149.   Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm, and are entitled to an award of nominal and compensatory damages and declaratory and equitable relief.

150.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to a declaration that Defendants violated their rights under the United States Constitution and to an injunction against Defendants' policy and actions.

151.   Plaintiffs are entitled to compensatory and nominal damages and the reasonable costs of this lawsuit, including reasonable attorney's fees.

**Count One:**
**First Amendment violation**
**Content and viewpoint discrimination**

152.   Plaintiffs repeat each of the allegations in paragraphs 1–151.

153.   Plaintiffs bring this count against all Defendants.

154.   When a university opens a forum for student organization recognition, it cannot discriminate against groups because of the content of the group's speech without demonstrating that the discrimination meets strict scrutiny.

155.   Neither can it discriminate against a group because of its viewpoint.

156.   Unbridled discretion to discriminate is a type of viewpoint discrimination.

157.   Defendants have opened a forum for student organizations to engage in expression and thus must operate that forum in a content- and viewpoint-neutral manner.

158.   Defendant Bitterbaum has delegated to Defendant Student Government the ability to grant student organizations the benefits of the student organization forum by recognizing them.

159.   Defendant Bitterbaum has delegated to Defendant Student Government the ability to implement rules and regulations for student organizations to access the benefits of recognition.

160.   Defendant Student Government has used the discretion granted it to discriminate against Plaintiffs' viewpoint.

161.   Defendant Student Government implements the *Nonrecognition Policy* which discriminates based on viewpoint both by its terms and by its grant of unbridled discretion to withhold recognized organization status from any student group for any reason or no reason at all.

162.   Requiring student groups to achieve the approval of the Review Committee and Student Senate discriminates based on viewpoint by conditioning recognized status on majoritarian consent.

163.   The *Nonrecognition Policy* grants Defendants Student Government and Bitterbaum unbridled discretion through five of its provisions:

      (A)   "The Student Senate will vote whether or not they support the establishment of the new club";

      (B)   Requiring that an organization receive the approval of the "SGA Review Committee";

(C)     Requiring an organization to "[p]rovide a valid service to SUNY Cortland that does not already exist";

(D)     Requiring an organization "not create a demand for resources (supervision, facilities, financial, etc.) greater than that which can be met"; and

(E)     Requiring an organization "not have an excessive amount of risk involved with the proposed activity."

164.    The lack of an appeal process for withholding recognition also shows that the government has unbridled discretion to govern the speech forum.

165.    The ability of Defendant Student Government to waive the requirements of the *Nonrecognition Policy* shows that the government has unbridled discretion to govern the speech forum.

166.    The First Amendment requires Defendants to implement comprehensive neutral criteria to ensure that Defendant Student Government and Defendant Bitterbaum recognize organizations in a viewpoint neutral manner.

167.    Defendants have not implemented such criteria.

168.    Thus, Defendant Student Government and Bitterbaum's *Nonrecognition Policy* violates the First Amendment.

169.    Defendants' *Nonrecognition Policy* violates Plaintiffs' right to Free Speech under the First Amendment to the United States Constitution, both facially and as applied.

170.    Pursuant to the *Nonrecognition Policy*, Defendant Student Government withheld recognition from Plaintiff TPUSA because of its viewpoints and those of the national Turning Point USA organization.

171.    Defendant Bitterbaum also withheld recognition from Plaintiff TPUSA because of its viewpoints and those of the national Turning Point USA organization.

172.    Defendant Karkov opposed recognition for Plaintiff TPUSA and acted with Student Senators to withhold that recognition because of the content and viewpoint of it and the national Turning Point USA organization's speech.

173.    Defendants' withholding of recognized status from Plaintiff TPUSA violated Plaintiffs' right to Free Speech under the First Amendment to the United States Constitution.

**Count Two:**
**First Amendment violation**
**Prior restraint**

174.    Plaintiffs repeat each of the allegations in paragraphs 1–151.

175.    Plaintiffs bring this count against Defendants Student Government and Bitterbaum.

176.    The First Amendment prohibits prior restraints.

177.    Withholding recognized student organization status is a prior restraint.

178.    Defendant Student Government and Bitterbaum's *Nonrecognition Policy* imposes a prior restraint through six of its provisions:

> (A)    "The Student Senate will vote whether or not they support the establishment of the new club";

> (B)    Requiring that an organization make changes to the organization's constitution as requested by the "SGA Review Committee";

> (C)    Requiring an organization to "[p]rovide a valid service to SUNY Cortland that does not already exist";

> (D)    Requiring that an organization "not create a demand for resources (supervision, facilities, financial, etc.) greater than that which can be met";

> (E)     Requiring that an organization "not have an excessive amount of risk involved with the proposed activity"; and

> (F)     Requiring that an organization collect 40 signatures prior to becoming recognized.

179.     Defendants Student Government and Bitterbaum imposed a prior restraint on Plaintiffs by requiring them to fulfill the six criteria identified in paragraph 178.

180.     Defendants Student Government and Bitterbaum must meet strict scrutiny to justify a prior restraint and must employ both substantive and procedural safeguards.

181.     Defendants' *Nonrecognition Policy* neither supports a compelling government interest nor uses the least restrictive means to any such interest.

182.     Defendants' *Nonrecognition Policy* has no substantive or procedural safeguards.

183.     Defendants' actions in withholding recognized status from Plaintiff TPUSA neither supports a compelling government interest nor was the least restrictive means to any such interest.

184.     Defendants' *Nonrecognition Policy* facially and as applied to Plaintiffs imposes a prior restraint in violation of the First Amendment to the United States Constitution.

**Count Three:**
**First Amendment violation**
**Right to associate**

185.     Plaintiffs repeat each of the allegations in paragraphs 1–151.

186.     Plaintiffs bring this count against all Defendants.

187.     The First Amendment guarantees Plaintiffs the right of association.

188.     Plaintiffs engage in expression and expressive activities as a group.

189.   A university's denial of recognition of a student organization without justification burdens and abridges the right of association.

190.   A university's denial of a student group's access to meeting space and other benefits and privileges of recognition, including the channels of communication available to other student groups on its campus, burdens and abridges the right of association.

191.   A university official's actions to deny recognition of a student organization without justification burdens and abridges the right of association.

192.   The *Nonrecognition Policy*'s requirement to obtain the signatures of 40 students restricts Plaintiffs' rights to associate freely and enter the student organization forum.

193.   Defendants' *Nonrecognition Policy* facially and as applied to Plaintiffs violates the First Amendment right of association.

194.   Defendants Student Government and Bitterbaum also burdened Plaintiffs' right of association by withholding recognized status from Plaintiff TPUSA because of Plaintiffs' affiliation with the national Turning Point USA organization.

195.   Defendant Karkov burdened Plaintiffs' right of association by acting with Student Senators to withhold Plaintiff TPUSA's recognition because of Plaintiffs' affiliation with the national Turning Point USA organization.

196.   Defendants thus conditioned access to the student organization forum and its benefits on Plaintiffs disaffiliating with the national Turning Point USA organization.

197.   Defendants' actions therefore violated Plaintiffs' First Amendment right of association.

**Count Four:**
**First Amendment violation**
**Right to assemble**

198.   Plaintiffs repeat each of the allegations in paragraphs 1–151.

199.   Plaintiffs bring this count against all Defendants.

200.   The First Amendment protects the right to assemble.

201.   This right includes the right to assemble with other groups or individuals without government interference.

202.   A university's denial of recognition of a student organization without justification burdens and abridges the right to assemble.

203.   A university's denial of a student group's access to meeting space and other benefits and privileges of recognition, including the channels of communication available to other student groups on its campus, burdens and abridges the right to assemble.

204.   A university official's actions to deny recognition of a student organization without justification burdens and abridges the right to assemble.

205.   The *Nonrecognition Policy*'s requirement to obtain the signatures of 40 students restricts Plaintiffs' rights to assemble and enter the student organization forum.

206.   Defendants' *Nonrecognition Policy* facially and as applied to Plaintiffs violates the First Amendment right to assemble.

207.   Defendants' actions violated Plaintiffs' right to assemble by withholding recognition from Plaintiff TPUSA because of Plaintiffs' affiliation with the national Turning Point USA organization.

208.   Defendant Karkov burdened Plaintiffs' right to assemble by acting with Student Senators to withhold Plaintiff TPUSA's recognition because of Plaintiffs' affiliation with the national Turning Point USA organization.

209.   Defendants cannot meet their heavy burden to justify the prior restraint on Plaintiffs' right to assemble.

210.   Defendants' withholding of and opposition to recognition therefore violate the First Amendment.

## Count Five:
## First Amendment violation
## Retaliation

211.   Plaintiffs repeat each of the allegations in paragraphs 1–151.

212.   Plaintiffs bring this count against all Defendants.

213.   The First Amendment's Free Speech Clause prohibits public universities and their officials from retaliating against or disciplining students for their constitutionally protected speech.

214.   Defendants Student Government and Bitterbaum withheld recognition from Plaintiff TPUSA based on the content and viewpoint of its protected speech.

215.   Defendant Karkov acted with Student Senators to withhold recognition from Plaintiff TPUSA because of the content and viewpoint of its protected speech.

216.   Defendant Karkov publicly accused Plaintiffs of supporting racism and not supporting "queer" individuals.

217.   Withholding recognition, acting with Student Senators to withhold recognition, and publicly labeling Plaintiffs' views as racist and opposed to "queer" individuals would deter a person of ordinary firmness from expressing her views.

218.   Defendants therefore retaliated against Plaintiffs for their protected speech in violation of the First Amendment.

## Count Six:
## Fourteenth Amendment violation
## Right to due process of law

219.   Plaintiffs repeat each of the allegations in paragraphs 1–151.

220.   Plaintiffs bring this count against Defendants Student Government and Bitterbaum.

221. The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to due process of law and prohibits Defendants from promulgating and employing vague standards that allow for content and viewpoint discrimination in determining whether to grant or withhold student organization recognition.

222. Defendants may not regulate speech based on policies that cause persons of common intelligence to guess at their meaning and differ as to their application.

223. Defendants may not regulate speech based on policies that do not provide persons of common intelligence fair warning as to what speech is permitted and what speech is prohibited.

224. Defendants Student Government and Bitterbaum's *Nonrecognition Policy* contains no criteria to guide Defendants in determining whether to grant or withhold student organization recognition.

225. Defendants' *Nonrecognition Policy* does not require that Defendants inform student groups of the basis for Defendants' decision to withhold recognized status.

226. The *Nonrecognition Policy* is also unconstitutionally vague through its three provisions that require an organization:

    (A)   To "[p]rovide a valid service to SUNY Cortland that does not already exist";

    (B)   "[N]ot create a demand for resources (supervision, facilities, financial, etc.) greater than that which can be met"; and

    (C)   "[N]ot have an excessive amount of risk involved with the proposed activity."

227.    These provisions are impermissibly vague and ambiguous and thus incapable of providing meaningful guidance to Defendants and of allowing Plaintiffs to conform their conduct to the *Nonrecognition Policy*'s requirements.

228.    Defendants' *Nonrecognition Policy* is impermissibly vague and ambiguous because it broadly authorizes Defendants to withhold recognized student organization status to groups for any reason or no reason at all, providing no objective criteria upon which to make this determination and no opportunity for Plaintiffs to conform their actions so as to participate in the forum.

229.    Defendants' *Nonrecognition Policy* violates both facially and as applied the Due Process Clause of the Fourteenth Amendment.

## PRAYER FOR RELIEF

Plaintiffs respectfully request that this Court enter judgment against Defendants and provide Plaintiffs with the following relief:

  a.    A declaratory judgment that Defendants Student Government and Bitterbaum's *Nonrecognition Policy* violates the First and Fourteenth Amendments to the United States Constitution both facially and as applied;

  b.    A declaratory judgment that Defendants' actions in withholding recognition from Plaintiff TPUSA violate the First and Fourteenth Amendments to the United States Constitution;

  c.    A preliminary and permanent injunction ordering Defendants Student Government and Bitterbaum, their agents, officials, servants, employees, and any other persons acting on their behalf to grant Plaintiff TPUSA recognized student organization status;

  d.    A preliminary and permanent injunction enjoining Defendants Student Government and Bitterbaum, their agents, officials, servants, employees, and any other persons acting on their behalf

from enforcing the following provisions of their *Nonrecognition Policy* facially and as applied:

    i. "The Student Senate will vote whether or not they support the establishment of the new club";

    ii. Requiring an organization to "[p]rovide a valid service to SUNY Cortland that does not already exist";

    iii. Requiring that an organization "not create a demand for resources (supervision, facilities, financial, etc.) greater than that which can be met";

    iv. Requiring that an organization "not have an excessive amount of risk involved with the proposed activity";

    v. Requiring that an organization make changes to the organization's constitution as requested by the "SGA Review Committee"; and

    vi. Requiring that an organization collect 40 signatures prior to becoming recognized.

e. A preliminary and permanent injunction enjoining Defendant Karkov from acting with Student Senators to withhold recognition from Plaintiff TPUSA.

f. Compensatory and nominal damages;

g. Plaintiffs' reasonable attorney's fees and costs and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

h. All other further relief to which Plaintiffs may be entitled.

Respectfully submitted this 21st day of February, 2024.

Michael G. McCartin                         /s/ Mathew W. Hoffmann
N.D.N.Y. Bar No. 51158                      Tyson C. Langhofer
MICHAEL G. MCCARTIN LAW PLLC                N.D.N.Y. Bar No. 702027
38 Mall Way #513                            Mathew W. Hoffmann
West Sand Lake, NY 12196                    N.D.N.Y. Bar No. 704728
Telephone: (518) 953-3333                   ALLIANCE DEFENDING FREEDOM
mccartinlaw@gmail.com                       44180 Riverside Pkwy
                                            Lansdowne, Virginia 20176
                                            Telephone: (571) 707-4655
                                            tlanghofer@ADFlegal.org
                                            mhoffmann@ADFlegal.org

                                            *Attorneys for Plaintiffs*

## JURY DEMAND

Plaintiffs demand trial by jury on all issues so triable.

                                            /s/ Mathew W. Hoffmann
                                            Mathew W. Hoffmann

                                            *Attorney for Plaintiffs*

## DECLARATION UNDER PENALTY OF PERJURY

I, Gabriella Delorenzo, a citizen of the United States and a resident of the State of New York, have read the forgoing complaint and hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 20th day of February, 2024, at Cortland, New York.

*Gabriella Delorenzo*

**DECLARATION UNDER PENALTY OF PERJURY**

I, Megan Rothmund, a citizen of the United States and a resident of the State of New York, have read the forgoing complaint and hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge.

Executed this 20th day of February, 2024, at Cortland, New York.