# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF NEW YORK
# SYRACUSE DIVISION

| | |
|---|---|
| **TURNING POINT USA AT SUNY CORTLAND**; **GABRIELLA DELORENZO**; AND **MEGAN ROTHMUND**,<br><br>*Plaintiffs*,<br><br>v.<br><br>**CORTLAND COLLEGE STUDENT ASSOCIATION**; **ERIK BITTERBAUM**, in his personal and official capacities as SUNY Cortland President; AND **NIKOLAY KARKOV**, in his personal and official capacities as SUNY Cortland professor,<br><br>*Defendants*. | Case No. 5:24-cv-00253-MAD-ML<br><br>**ORAL ARGUMENT REQUESTED**<br><br>**EXPEDITED HEARING REQUESTED** |

## PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION AND EXPEDITED HEARING

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION .................................................................................................................. 1

FACTUAL BACKGROUND ................................................................................................. 2

    I.    Plaintiffs Delorenzo and Rothmund form Plaintiff TPUSA to voice their views on campus. ........................................................................................... 2

    II.    Plaintiffs comply with Defendants' *Nonrecognition Policy* but instead of granting recognition, Student Senators and Defendant Karkov assail their views. ............................................................................................................ 2

    III.    Defendant Bitterbaum praises censorship while also withholding recognition from TPUSA. ................................................................................. 4

    IV.    Defendants' *Nonrecognition Policy* and related actions are inflicting ongoing injury. ............................................................................................... 5

LEGAL STANDARD ............................................................................................................ 5

ARGUMENT .......................................................................................................................... 5

    I.    Plaintiffs will likely succeed on the merits of their viewpoint discrimination claim. ...................................................................................... 5

        A.    Defendants' *Nonrecognition Policy* substitutes favoritism of majority views for viewpoint neutrality. ............................................................... 6

        B.    Defendants' *Nonrecognition Policy* grants unbridled discretion. ................ 7

        C.    Defendants cannot meet strict scrutiny. ....................................................... 8

    II.    Defendants are inflicting ongoing irreparable injury. .................................... 9

    III.    An injunction will promote the public interest. ........................................... 10

CONCLUSION ..................................................................................................................... 10

CERTIFICATE OF SERVICE ............................................................................................. 11

# TABLE OF AUTHORITIES

**Cases**

*Amidon v. Student Association of SUNY at Albany,*
    508 F.3d 94 (2d Cir. 2007) .................................................................................. 6, 7, 8

*Board of Regents v. Southworth,*
    529 U.S. 217 (2000) ............................................................................................. 6, 7, 8

*Bronx Household of Faith v. Board of Education,*
    331 F.3d 342 (2d Cir. 2003).................................................................................. 5, 9, 10

*Elrod v. Burns,*
    427 U.S. 347 (1976) ............................................................................................. 9

*Forsyth County v. Nationalist Movement,*
    505 U.S. 123 (1992) ............................................................................................. 7

*Friend v. Gasparino,*
    61 F.4th 77 (2d Cir. 2023) .................................................................................... 8

*Frisby v. Schultz,*
    487 U.S. 474 (1988) ............................................................................................. 9

*Healy v. James,*
    408 U.S. 169 (1972) ............................................................................................. 8

*Iancu v. Brunetti,*
    139 S. Ct. 2294 (2019) ......................................................................................... 6

*New Hope Family Services, Inc. v. Poole,*
    966 F.3d 145 (2d Cir. 2020).................................................................................. 5

*New York Progress & Protection PAC v. Walsh,*
    733 F.3d 483 (2d Cir. 2013).................................................................................. 10

*Paulsen v. Lehman,*
    745 F. Supp. 858 (E.D.N.Y. 1990)........................................................................ 9

*Rosenberger v. Rector & Visitors of University of Virginia,*
    515 U.S. 819 (1995) ............................................................................................. 5, 6

*Speech First, Inc. v. Cartwright,*
    32 F.4th 1110 (11th Cir. 2022) ............................................................................. 6

**INTRODUCTION**

SUNY Cortland students Gabriella Delorenzo and Megan Rothmund wanted to participate in the quintessential marketplace of ideas—their college campus—by starting a chapter of Turning Point USA (TPUSA). Rather than welcome Plaintiff TPUSA's views, Defendants Cortland College Student Association (Student Government) and SUNY Cortland President Erik Bitterbaum used those views against TPUSA. When Plaintiffs sought recognized student organization status, Student Senators and SUNY Cortland Professor Defendant Nikolay Karkov questioned and demeaned their views for 100 minutes. Defendants Student Government and Bitterbaum then withheld recognition under their *Nonrecognition Policy*, which grants them unbridled discretion to deny recognition for any reason—or no reason at all.

Without recognition, Plaintiff TPUSA cannot participate in Cortland's student organization forum and receive its benefits, including an allocation of the mandatory student activity fee, campus reservations for events and meetings, and the ability to advertise and table on campus. Defendants' viewpoint-discriminatory barrier to entry violates the First Amendment. This Court should grant a preliminary injunction:

(1) ordering Defendants Student Government and Bitterbaum to grant Plaintiff TPUSA recognized student organization status; and

(2) enjoining Defendants Student Government and Bitterbaum from enforcing facially and as applied the *Nonrecognition Policy*'s provision that "[t]he Student Senate will vote whether or not they support the establishment of the new club."

# FACTUAL BACKGROUND

**I.  Plaintiffs Delorenzo and Rothmund form Plaintiff TPUSA to voice their views on campus.**

In Fall 2023, Plaintiffs Delorenzo, Rothmund, and other students formed Plaintiff TPUSA. Doc. 1 ¶ 73. Plaintiff TPUSA is affiliated with the national Turning Point USA organization, which has over 3,500 chapters from coast to coast. *Id.* ¶¶ 24, 28. Plaintiff TPUSA is a student organization that seeks to promote the principles of freedom, free markets, and limited government at SUNY Cortland. *Id.* ¶¶ 21–22. To spread its message, it wants to enter SUNY Cortland's student organization forum, which entitles recognized student organizations to receive an allocation of the mandatory student activity fee, advertise and hold events on campus, and table on campus. *Id.* ¶ 58.

**II.  Plaintiffs comply with Defendants' *Nonrecognition Policy* but instead of granting recognition, Student Senators and Defendant Karkov assail their views.**

Defendants Student Government and Bitterbaum limit access to the student organization forum to those organizations they recognize. *Id.* ¶¶ 56–57. To receive recognition, student organizations must comply with Defendants' eight-step *Nonrecognition Policy*. *Id.* ¶¶ 61, 64. Plaintiffs satisfied the first seven steps: they had an initial meeting with Defendant Student Government's Vice President, the Vice President exempted them from the interest meeting, Plaintiffs collected over 40 student signatures, they developed a constitution acceptable to Defendant Student Government, and Plaintiffs received the approval of Defendant Student Government's Review Committee. *Id.* ¶ 80. Defendants' *Nonrecognition Policy* then required Plaintiffs to present their organization to Defendant Student Government's Student Senate and answer questions. *Id.* ¶¶ 64, 84. Under the *Policy* and without any guidelines or criteria, the Student Senate would then "vote whether or not they support the establishment of the new club." *Id.* ¶¶ 64, 71.

2

On November 28, Plaintiffs presented TPUSA to the Student Senate. *Id.* ¶ 84. Many students and Defendant Karkov attended the meeting to oppose Plaintiff TPUSA from receiving recognition. *Id.* ¶ 85. Plaintiffs respectfully presented their vision for TPUSA. *Id.* ¶¶ 84, 121. The Student Senate then opened the floor for questions from Student Senators. *Id.* ¶ 86. For around 100 minutes, Student Senators and Defendant Karkov grilled Plaintiffs about their views and those of the national Turning Point organization. *Id.* ¶¶ 88–124. Students repeatedly asked whether Plaintiff TPUSA was a chapter of the national Turning Point organization and whether it would disaffiliate with that organization to become recognized on campus. *Id.* ¶¶ 89–94, 119–20. Others criticized views they ascribed to the national organization about gender identity and race. *Id.* ¶¶ 101, 103, 106, 118.

During the questioning, a Student Senator yielded his questioning time to Defendant Karkov, who launched into a prepared speech. *Id.* ¶¶ 97–98. He told Plaintiffs they could "not so much disaffiliate" from the national organization. *Id.* ¶ 100. He then discussed what he believed to be the views of the national Turning Point organization about gender identity and critical race theory and indicated those views opposed "queer" people. *Id.* ¶ 101. Over a minute into Defendant Karkov's remarks, Plaintiff Delorenzo respectfully asked him whether he had a question. *Id.* ¶ 102. Undeterred, Defendant Karkov continued his speech, discussing views he ascribed to the national organization about race relations and labeling those views racist. *Id.* ¶ 103. Plaintiffs continued listening but two minutes in, Plaintiff Delorenzo said she would have to stop the professor because he was not asking a question. *Id.* ¶ 104. Other students shouted, "Let him speak! Let him finish!" *Id.* ¶ 105. And Defendant Karkov continued, discussing views he attributed to the national Turning Point USA organization about race. *Id.* ¶ 106. Defendant Karkov's speech received applause, with one student even giving him a standing ovation. *Id.* ¶ 109.

3

Plaintiff Delorenzo affirmed Defendant Karkov's right to have his own opinions while affirming Plaintiffs' own right to express their opinions. *Id.* ¶¶ 111–13. Many present heckled Plaintiff Delorenzo during her brief and respectful response. *Id.* ¶ 114. Plaintiffs' fellow students told them to "go home" while Plaintiff Delorenzo spoke. *Id.*

Even so, Student Senators persisted in their questioning. They and other students targeted Plaintiffs' affiliation with the national organization. *Id.* ¶¶ 116–19. They criticized the national organization and claimed it would make students "uncomfortable." *Id.* ¶ 118. When the questioning ended, Plaintiffs left the room. *Id.* ¶ 122. The Senators then voted to withhold recognition from TPUSA without explanation. *Id.* ¶ 123.

Hostility to Plaintiffs' views did not end with the Student Senate meeting. One Student Senator anonymously posted on social media that he or she voted to withhold recognition upon finding out how "hateful" Plaintiff TPUSA allegedly was. *Id.* ¶ 126.

### III. Defendant Bitterbaum praises censorship while also withholding recognition from TPUSA.

On December 4, Plaintiffs met with Defendant Bitterbaum to inform him about the Student Senate's discrimination against their views and Defendant Karkov's inappropriate action against those views. *Id.* ¶ 128. Defendant Bitterbaum claimed to be powerless over Defendant Karkov, despite acknowledging the power imbalance between the students and the professor. *Id.* ¶ 131. He also informed Plaintiffs they did not have any appeal right from Defendant Student Government's decision. *Id.* ¶ 130. And—looking into his "crystal ball"—he even discouraged them from reapplying for recognition the next semester because "the same people" could "show up again." *Id.* ¶ 132. He summed up his position: "the tragedy and also the greatness of democracy" is that "[w]e silence voices all the time." *Id.* ¶ 134. He refused to recognize Plaintiff TPUSA. *Id.* ¶ 135.

4

IV. **Defendants'** *Nonrecognition Policy* **and related actions are inflicting ongoing injury.**

Plaintiff TPUSA remains unrecognized and thus cannot access the benefits of Defendants' student organization forum. *Id.* ¶ 140. It cannot receive an allocation of the mandatory student activity fee, advertise or table on campus equivalent to other student groups, or reserve campus rooms for events and meetings. *Id.* ¶¶ 58–59. Plaintiffs intend to hold speaking and tabling events this semester on campus, yet cannot do so. *Id.* ¶ 141. What's more, Plaintiff Delorenzo will graduate in May. *Id.* ¶ 142. Without preliminary relief, she will never participate in the student organization forum as a member of TPUSA. *Id.*

## LEGAL STANDARD

To obtain a preliminary injunction, a party must show "(1) that it will be irreparably harmed if an injunction is not granted, and (2) either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation, and a balance of the hardships tipping decidedly in its favor." *Bronx Household of Faith v. Bd. of Educ.*, 331 F.3d 342, 348–49 (2d Cir. 2003). Because the loss of First Amendment freedoms "unquestionably constitutes irreparable injury," the "dominant, if not the dispositive, factor" is the questions on the merits. *New Hope Fam. Srvs., Inc. v. Poole*, 966 F.3d 145, 181 (2d Cir. 2020).

## ARGUMENT

I. **Plaintiffs will likely succeed on the merits of their viewpoint discrimination claim.**

In any forum, the government cannot discriminate based on viewpoint. "It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys." *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) (denying access to student activity fee funding for religious student organization violated the First Amendment right to free speech). "In the realm of private speech or expression, government regulation may not favor one

5

speaker over another." *Id.* (citations omitted). That viewpoint discrimination necessarily "collide[s]" with the First Amendment and is thus per se unconstitutional. *See Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019). Viewpoint discrimination "must be invalidated." *Id.* at 2302; *accord Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1126 (11th Cir. 2022) (government cannot discriminate based on viewpoint "seemingly as a per se matter").

Defendants' *Nonrecognition Policy* discriminates based on viewpoint in two ways: (1) through its plain terms and (2) by its grant of unbridled discretion. That viewpoint discrimination is per se unconstitutional, but neither can Defendants meet their burden to surmount strict scrutiny.

### A. Defendants' *Nonrecognition Policy* substitutes favoritism of majority views for viewpoint neutrality.

"Access to a public forum … does not depend upon majoritarian consent." *Bd. of Regents v. Southworth*, 529 U.S. 217, 235 (2000). The "vote in a student body referendum substantially captures one thing: the student body's valuation of the [recognized student organization]." *Amidon v. Student Ass'n of SUNY at Albany*, 508 F.3d 94, 102 (2d Cir. 2007). But that "[f]avoritism of majority views" evinces viewpoint discrimination, which "is not an acceptable principle for allocating resources." *Id.*

Defendants' *Nonrecognition Policy* requires majoritarian consent. It provides that the Student Senate—consisting of students representing already recognized organizations—"will vote whether or not they support the establishment of the new club." Doc. 1 ¶ 64(H). The facts here make apparent the dangers of viewpoint discrimination inherent in majority rule. As the 100-minute questioning of Plaintiffs showed, Student Senators' objection to granting recognition was precisely to views ascribed to TPUSA. Doc. 1 ¶¶ 87–124. The vote of the Student Senate "reflects the student body's majority opinion of the value or popularity of [TPUSA's] speech." *Amidon*, 508 F.3d at 101. But the "whole theory of viewpoint neutrality is that

6

minority views are treated with the same respect as are majority views." *Southworth*, 529 U.S. at 235. Requiring Student Senate consent for recognition discriminates based on viewpoint.

### B. Defendants' *Nonrecognition Policy* grants unbridled discretion.

Not only do the plain terms of the *Nonrecognition Policy* discriminate based on viewpoint, but those same terms grant Defendants unbridled discretion. The First Amendment's viewpoint neutrality mandate requires that regulations on First Amendment freedoms must contain "narrow, objective, and definite standards to guide the licensing authority." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 131 (1992). "The reasoning is simple: If the permit scheme involves appraisal of facts, the exercise of judgment, and the formation of an opinion, by the licensing authority, the danger of censorship and of abridgment of our precious First Amendment freedoms is too great to be permitted." *Id.* (cleaned up). Policies governing student organization fora must have "effective safeguards to prevent … discriminatory" applications. *Amidon*, 508 F.3d at 103. "[N]on-exclusive," "vague," or "pliable" criteria "do not ensure that an official's discretion is adequately bridled." *Id.* at 104 (cleaned up).

Defendants' *Nonrecognition Policy* provides *no* criteria to limit the Student Senate's discretion. The Senate has the power to withhold recognition for any reason—or no reason at all. Doc. 1 ¶¶ 71–72. The complete absence of any criteria creates the "disconcerting risk that [Defendant Student Government] could camouflage its discriminatory use of the [vote] through post-hoc reliance on unspecified criteria." *Amidon*, 508 F.3d at 104. Even worse, Defendants here did not even attempt camouflage. The Student Senators and Defendant Bitterbaum made themselves clear: the objection of some to the views of TPUSA justified withholding recognition. Doc. 1 ¶¶ 87–124, 132–35. What's more, the other criteria in the *Nonrecognition Policy* do not set adequate limits because those terms themselves are

7

vague and pliable (using terms like "demand for resources" and "excessive amount of risk") and because nothing in the *Policy* identifies those criteria as governing the Senate's discretion. *See* Doc. 1 ¶¶ 63–64; *Amidon*, 508 F.3d at 104 ("[A] nonexclusive set of 'safeguards,' some of which are so indefinite as to be meaningless and thus incapable of providing guidance to student decision makers," including "the enrichment of campus life" and "complement the educational mission," cannot save a policy from viewpoint discrimination.).

### C. Defendants cannot meet strict scrutiny.

Viewpoint discrimination is per se unconstitutional, but Defendants cannot meet even strict scrutiny. Strict scrutiny "requires that the policy be narrowly tailored to serve a compelling governmental interest." *Amidon*, 508 F.3d at 106. And "[n]arrow tailoring requires that the restriction on speech be necessary to serve the asserted compelling interest, precisely tailored to serve that interest, and the least restrictive means readily available for that purpose." *Friend v. Gasparino*, 61 F.4th 77, 91 (2d Cir. 2023) (cleaned up). Defendants neither have a compelling government interest nor employ the least restrictive means to any such interest.

College campuses are "peculiarly the marketplace of ideas." *Healy v. James*, 408 U.S. 169, 180 (1972) (cleaned up). A student organization forum exists to "facilitat[e] the free and open exchange of ideas by, and among, [a college's] students." *Southworth*, 529 U.S. at 229. SUNY Cortland advertises that its forum enables students "to find a match for [their] interests and [their] enthusiasm for new experiences."[1] Similarly, Defendant Student Government recognizes the student organization forum "exist[s] to educate and create programming to enhance the

---

[1] SUNY Cortland, *Clubs and Organizations*, https://www2.cortland.edu/student-life/clubs-and-organizations/ (last accessed Feb. 21, 2024).

8

campus community."[2] Defendants therefore have no compelling interest in withholding recognition from a group that "match[es]" Plaintiffs' "interests" and that seeks to provide programming for the campus community.

Neither did Defendants use the least restrictive means to any government interest. Defendants' *Nonrecognition Policy* imposes a total barrier to entry to the student organization forum. Organizations cannot participate unless the majority of the Student Senate—in its discretion—consents. "A complete ban can be narrowly tailored … only if each activity within the proscription's scope is an appropriately targeted evil." *Paulsen v. Lehman*, 745 F. Supp. 858, 864 (E.D.N.Y. 1990) (quoting *Frisby v. Schultz*, 487 U.S. 474, 485 (1988)). But Defendants' one-size-fits-all policy subjects every student organization to Defendants' majoritarian consent and unbridled discretion—regardless of the effect, if any, an organization has on the interest purportedly underlying that policy. Subjecting group recognition to majoritarian consent has no relation to any government interest. Defendants' *Policy* therefore fails strict scrutiny and is unconstitutional.

## II.   Defendants are inflicting ongoing irreparable injury.

"The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). Policies, like Defendants' *Nonrecognition Policy*, that "directly limit[ ] speech" inflict "presumed" irreparable injury. *Bronx Household*, 331 F.3d at 349. Plaintiff TPUSA remains unrecognized and thus unable to access the benefits of the student organization forum—all because of its protected speech. Doc. 1 ¶ 140. Without a preliminary injunction, Plaintiffs cannot hold events on campus this semester. *See id.* ¶ 141. And Plaintiff Delorenzo will graduate in May, meaning that without

---

[2] SUNY Cortland, *Student Government Association*, https://www2.cortland.edu/student-life/clubs-and-organizations/sga/ (last accessed Feb. 21, 2024).

preliminary relief, she will remain permanently irreparably injured by Defendants' *Policy* and actions. *Id.* ¶ 142.

### III. An injunction will promote the public interest.

Because Plaintiffs have shown irreparable injury and a likelihood of success on their claims, they merit a preliminary injunction. *Bronx Household*, 331 F.3d at 348–49. But the balance of equities also tips decidedly in their favor. "[S]ecuring First Amendment rights is in the public interest." *N.Y. Progress & Prot. PAC v. Walsh*, 733 F.3d 483, 488 (2d Cir. 2013). And the government "does not have an interest in the enforcement of an unconstitutional" policy. *Id.* Defendants will suffer no injury from TPUSA entering the forum because Defendants designed the forum precisely to serve the interests of Cortland students. *See supra* Section I.C.

## CONCLUSION

This Court should grant Plaintiffs' motion for preliminary injunction.

Respectfully submitted this 23rd day of February, 2024.

Michael G. McCartin
N.D.N.Y. Bar No. 511158
MICHAEL G. MCCARTIN LAW PLLC
38 Mall Way #513
West Sand Lake, NY 12196
Telephone: (518) 953-3333
mccartinlaw@gmail.com

*/s/ Mathew W. Hoffmann*
Tyson C. Langhofer
N.D.N.Y. Bar No. 702027
Mathew W. Hoffmann
N.D.N.Y. Bar No. 704728
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, Virginia 20176
Telephone: (571) 707-4655
tlanghofer@ADFlegal.org
mhoffmann@ADFlegal.org

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

      I hereby certify that on February 23, 2024, I filed the foregoing and will serve the same on these parties:

Cortland College Student Association
Corey Union, Room 217
103 Prospect Terrace
Cortland, NY 13045

Erik Bitterbaum
22 Graham Ave
Miller Building, Room 408
Cortland, NY, 13045

Nikolay Karkov
Old Main, Room 138
Gerhart Dr.
Cortland, NY 13045


Dated: February 23, 2024                          /s/ *Mathew W. Hoffmann*
                                                              Counsel for Plaintiffs